IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARK JOOSTEN,

        Plaintiff,

vs.                                    No. CIV 02-0350 WDS

JO ANNE B. BARNHART, Commissioner
of the Social Security Administration,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Decision filed on July 26, 2002 **[docket # 6].**  Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not eligible for supplemental security income or disability insurance benefits.   The Court, having considered Plaintiff's Motion **[docket # 6]** and Memorandum Brief **[docket # 7]**, Defendant's Response **[docket# 9]**, Plaintiff's Reply **[docket # 11]**, the administrative record and applicable law, finds that Plaintiff's Motion should be **GRANTED IN PART**, and that this matter should be remanded to the Commissioner for further proceedings in accordance with this Memorandum Opinion and Order.

**Procedural Background**

    Plaintiff, who was born on June 1, 1962, filed his initial applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act on April 4, 2000. **Tr. at 72-74; 246-48.**  Plaintiff alleged that he became unable to work as a result of his disabling conditions on February 23, 2000.  **Tr. at 72, 246.**  After Plaintiff's application was denied at the initial level on June 19, 2000, **Tr. at 56,** he filed a request for

reconsideration on July 10, 2000, **Tr. at 60-61.**  His request for reconsideration was denied on

August 25, 2000, **Tr. at 62-64, 253-55,** and he thereafter filed a request for hearing by an

administrative law judge ("ALJ") on September 1, 2000, **Tr. at 65-66.**

 The hearing before the ALJ was held on June 4, 2001, at which Plaintiff appeared and was

represented by an attorney.  **Tr. at 27-53.**  Plaintiff alleged that he was disabled as a result of

fibromyalgia, back pain and depression.  **Tr. at 41, 45, 50-51.**  In a decision dated November 23,

2001, the ALJ denied Plaintiff's claims for DIB and SSI.  **Tr. at 18-24.**  Plaintiff then filed a request

for review with the Appeals Council on January 22, 2002.  **Tr. at 7-14.**  The Appeals Council denied

Plaintiff's request for review on February 22, 2002, **Tr. at 5-6,** and thereby rendered the ALJ's

decision the final decision of the Commissioner of Social Security ("Commissioner").  *See* 20 C.F.R.

§ 404.981 (2003); 20 C.F.R. § 416.1481 (2003).

 Plaintiff filed this action on March 28, 2002 in which he seeks judicial review of the

Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  The

parties have consented to the undersigned United States Magistrate Judge conducting all proceedings

**[docket # 13, 16],** and on October 27, 2003 this case was reassigned to the undersigned United

States Magistrate Judge pursuant to 28 U.S.C. § 636(c) **[docket # 17].**

<u>**Standard of Review**</u>

 This Court may only review the Commissioner's decision to determine whether it is supported

by substantial evidence and whether correct legal standards were applied.  *Andrade v. Secretary of*

*Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993).  In determining whether the

Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the

evidence, nor should it substitute its judgment for that of the Commissioner.  *Glass v. Shalala,* 43

F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1993). The "substantial evidence" standard is satisfied by more than a scintilla, but less than a preponderance, of evidence. *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

The issue in this case is whether Plaintiff is "disabled" and therefore qualified for benefits under Titles II and XVI of the Social Security Act. A sequential five-step analysis applies in determining whether an adult claimant is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988); 20 C.F.R. § 404.1520 (2003); 20 C.F.R. § 416.920 (2003). First, the question is whether the claimant is engaged in substantial gainful activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 750-51. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* at 751. If so, the impairment is considered to be presumptively disabling and the claimant is entitled to benefits. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.* The claimant is not disabled if he or she can perform past work. *Id.* If the claimant cannot perform past work, the analysis proceeds to step five. *Id.* At step

3

five, the burden shifts to the Commissioner to establish that the claimant has the residual functional capacity "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)).  At this step, the claimant is entitled to benefits unless the Commissioner establishes that the claimant can "perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

<u>**Application of the Sequential Five-Step Analysis**</u>

<u>**Steps One Through Three**</u>

The ALJ ruled at step one of the sequential five-step analysis that Plaintiff had not engaged in substantial gainful activity after the onset of his disability on February 23, 2000. **Tr. at 18.**  At step two, the ALJ concluded that Plaintiff has severe impairments including fibromyalgia, spondylolisthesis in the lumbar spine, and a major depressive disorder.  **Tr. at 18, 21.**  The ALJ found at step three that Plaintiff's impairments did not meet or equal any Listed Impairment.  **Tr. at 18.**  The parties do not contest the ALJ's findings at steps one through three of the sequential five step analysis.

<u>**Step Four:  Does Plaintiff's Impairment Prevent Him from Doing Past Work?**</u>

At step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a wide range of light-level work, and could therefore perform previous jobs that fell within that category.  **Tr. at 24.**  Plaintiff contends that the ALJ erred in assessing Plaintiff's RFC, and that the ALJ also erred when he found that Plaintiff could perform some of his past relevant work.

Step four of the sequential analysis is comprised of three phases.  *Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996).  First, the ALJ is required to assess the claimant's RFC.  *Id.*  Second, the ALJ must assess the physical and mental demands of the claimant's past relevant work.  *Id.*  "Past

relevant work" is defined for these purposes as "work that (1) occurred within the past fifteen years (the so-called recency requirement), (2) was of sufficient duration to enable the worker to learn to do the job (the so-called duration requirement), and (3) was substantial gainful employment." *Jozefowicz v. Heckler,* 811 F.2d 1352, 1355 (10th Cir. 1987).  At the third phase, the ALJ must determine whether the claimant has the ability to meet the demands found in phase two despite the limitations found in phase one.  *Winfrey,* 92 F.3d at 1023.

The ALJ assessed Plaintiff's RFC in the first phase of his step four analysis, then concluded that, "[b]ased on my residual functional capacity finding for a wide range of light-level work, the claimant would be able to perform some of his previous work, in particular the jobs of a customer service representative, PBX operator, and jewelry inspector."  **Tr. at 24.**  The ALJ reached this conclusion without determining whether the jobs of customer service representative, PBX operator, and jewelry inspector met the definition of "past relevant work."   An assessment of the physical and mental demands of Plaintiff's past relevant work, as well as an analysis of whether Plaintiff has the ability to meet the demands of his past relevant work, are also absent from the ALJ's decision.

Defendant concedes that the ALJ failed to perform a proper step four analysis when he assessed Plaintiff's ability to do past work.  However, Defendant contends that this error was harmless because the ALJ also made an alternative step five finding.  In other words, if the ALJ's step five determination was correct, Plaintiff would not be disabled for DIB or SSI purposes even if the ALJ erred when he found at step four that Plaintiff could perform his past relevant work.  *See Murrell v. Shalala,* 43 F.3d 1388 (10th Cir. 1994) (unchallenged step five finding that Plaintiff retained the RFC to perform other work in the national economy was sufficient basis for denial of benefits even if plaintiff prevailed on step four arguments).  Because Defendant concedes that the ALJ erred in

assessing Plaintiff's ability to perform past relevant work, I will only address Plaintiff's arguments

pertaining to the ALJ's assessment of his RFC in this section.

### Did the ALJ Err in Assessing Plaintiff's RFC?

An individual is disabled if he or she cannot "engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).  Thus, in order to determine

whether Plaintiff is disabled, the effect of his impairment on his ability to work must be measured.

An RFC assessment provides a measure of what a claimant can still do despite his or her limitations.

20 C.F.R. § 404.1545(a) (2003); 20 C.F.R. § 416.945(a) (2003).  The ALJ found that Plaintiff retains

the RFC to perform "a wide range of light-level work activity."  **Tr. at 21.**  Plaintiff contends that

the ALJ erred in his RFC assessment for several reasons, which I will address in turn.

### 1.      Did the ALJ Fail to Perform the Proper Credibility Analysis?

Plaintiff has been diagnosed with fibromyalgia, **Tr. at 167-70, 223-33,** which is a syndrome

that involves pain in fibrous tissues, muscles, tendons, and ligaments.  *See* The Merck Manual of

Diagnosis & Therapy 1369 (Robert Berkow & Andrew J. Fletcher eds., 16th ed. 1992).  Plaintiff has

also received diagnoses of back pain and depression.  **Tr. at 167-70, 223-33.**  Where a claimant has

established by objective medical evidence that he has an impairment that could reasonably be expected

to produce his alleged disabling pain, an ALJ must consider all of the evidence to decide whether he

believes the claimant's allegations about the functional limitations that result from the pain.  *See* 20

C.F.R. § 404.1529 (2003); 20 C.F.R. § 416.929 (2003); *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir.

1995).  After first finding that Plaintiff "has symptom-producing medical problems," the ALJ

6

determined that Plaintiff's "testimony and other evidence do not credibly establish functional limitations to the extent alleged." **Tr. at 19.** Plaintiff contends that the ALJ failed to apply correct legal standards in his credibility analysis.

Plaintiff's first argument is that the ALJ erred when he failed to explain what testimony he found to be non-credible. Instead, Plaintiff contends that the ALJ "made an unsupported conclusory statement" that Plaintiff's testimony was not credible without making clear what weight he gave to Plaintiff's statements and the reasons for that weight. It is true that "findings as to credibility should be closely and affirmatively linked to substantial evidence," and, in assessing the credibility of a social security claimant's allegations of pain, an ALJ must explain "why the specific evidence . . . led him to conclude claimant's subjective complaints were not credible." *Kepler,* 68 F.3d at 391. However, contrary to Plaintiff's argument, I find that the ALJ sufficiently linked his findings about Plaintiff's credibility with substantial evidence in the record.

In deciding that Plaintiff's impairments did not prevent him from performing a wide-range of light work, the ALJ first noted that Plaintiff testified that his symptoms and limitations included "chronic pain in his back and multiple body joints, a restricted ability to stand, walk, lift and use his hands, fatigue and feelings of irritability, social isolation and mental confusion." **Tr. at 19.** The ALJ then cited the following specific evidence in the record that led him to conclude that Plaintiff's functional restrictions were not as severe as he had testified.

With respect to Plaintiff's allegations relating to his physical pain and resulting limitations, the ALJ noted that physicians at the University of New Mexico Medical Center ("UNMMC") began treating Plaintiff for fibromyalgia and back pain in August of 1998. **Tr. at 19.** UNMMC records indicate that Plaintiff had tender points in his shoulders and other joints, but retained good range of

motion. **Tr. at 167-70, 223-33.** These records also indicate that, while Plaintiff used some pain medication, he did not pursue recommendations for physical therapy, **Tr. at 169, 170,** and felt that the pain clinic he had been referred to had nothing to offer him, **Tr. at 229.**

The ALJ also cited the results of two consultative examinations.[1] In the first evaluation, which was performed on May 24, 2000, Dr. Eugene Toner found that Plaintiff had a full range of motion in his back, elbows, wrists, knees and ankles, but had a decreased range of motion in his shoulders. **Tr. at 174-75.** Plaintiff also exhibited weakness in his upper and lower extremities, but showed no evidence of joint inflammation or effusion, and no evidence of any atrophy to the upper or lower extremities. **Tr. at 174.** Dr. Toner found that Plaintiff had a back condition, spondylolisthesis with segmental instability, that limited him to lifting no more than twenty-five pounds and standing, walking and sitting no more than six hours during the day. **Tr. at 174.** However, Dr. Toner found that Plaintiff's decreased range of motion of his shoulders and his weakness in the extremities was not physiologic and resulted from psychiatric problems. **Tr. at 175.** Dr. Toner also included "hysterical presentation" in his assessment. **Tr. at 174.**

In the second evaluation, which was performed on August 9, 2001, Dr. Anthony Reeve reported an entirely normal physical examination with the exception of a slightly reduced lumbar flexion. *See* **Tr. at 243.** Dr. Reeve concluded that Plaintiff's vocational status was not limited given his clinical presentation, and could work eight hours per day. **Tr. at 244.** However, Dr. Reeve also noted his impression that Plaintiff exhibited exaggerated pain responses, and because of his

---

[1]The first evaluation, by Dr. Eugene Toner, was undertaken pursuant to a request by the Social Security Administration. **Tr. at 29.** Plaintiff's counsel objected to Dr. Toner's evaluation at the hearing before the ALJ. **Tr. at 29-33.** In response to Plaintiff's objections, the ALJ ordered a second consultative examination by Dr. Anthony Reeve. *See* **Tr. at 158, 241-44.**

complaints of pain, Dr. Reeve found that Plaintiff would probably fall in the light to medium duty category.  **Tr. at 244.**  Thus, as the ALJ observed, both Drs. Toner and Reeve concluded that Plaintiff was capable of performing at least light level work.

In addition to citing the foregoing specific evidence as support for his finding that Plaintiff's functional restrictions were not as severe as he alleged, the ALJ explained why he accorded this evidence more weight than other arguably conflicting evidence.  In this regard, Plaintiff's treating physician, Dr. Sarah Gopman, completed a Physician's Questionnaire and a work capacity assessment on December 8, 2000.  **Tr. at 213-17.**  The work capacity assessment indicated that Plaintiff's ability to engage in physical activities was quite limited.  *See* **Tr. at 215-16.**  However, the ALJ noted that Dr. Gopman wrote several disclaimers on these reports, including a note that  "fibromyalgia is a condition diagnosed almost exclusively by history, as there are few findings on physical exam," **Tr. at 213,** and that, given her limited interactions with Plaintiff, she could not answer how many hours or days Plaintiff would be able to work per week, **Tr. at 214.**  Dr. Gopman also noted that she had "asked for [Plaintiff's] help" in completing the work capacity assessment, and that a "more objective view might be obtained via evaluation by an occupational therapist."  **Tr. at 215.**

The ALJ also provided the following explanation as to why he did not find a vocational evaluation performed by Mr. David Montoya on September 6, 2000 particularly helpful with regard to Plaintiff's upper extremity functioning.  Mr. Montoya found that Plaintiff's fine and gross motor dexterity capabilities were significantly impaired.  **Tr. at 143.**  However, the ALJ noted that in a consultative examination performed nearly one year later in July, 2001, Dr. Anthony Reeve found that Plaintiff had "full range of motion in his upper extremities, including his shoulders and wrists, and he had full strength in his hands and wrists."  **Tr. at 22.**  The ALJ stated that Dr. Reeve's findings

9

suggested that Plaintiff might not have exerted full effort during Mr. Montoya's manual dexterity testing. **Tr. at 22.** The ALJ also noted that Plaintiff wore bandages on both hands and wrists when he arrived for his testing with Mr. Montoya, *see* **Tr. at 144,** even though none of Plaintiff's treating or examining physicians mentioned any need for Plaintiff to wear bandages. The ALJ opined that these bandages might have further limited Plaintiff's manual dexterity. **Tr. at 22.**

With respect to Plaintiff's testimony relating to functional restrictions resulting from his alleged inability to concentrate, the ALJ cited a mental status examination of Plaintiff that took place on January 18, 2000. **Tr. at 19.** The examination revealed no obvious deficits in terms of Plaintiff's intellect or ability to pay attention even though Plaintiff's mood was irritable. **Tr. at 193.** Additionally, the vocational testing performed by Mr. David Montoya indicated that Plaintiff "had no difficulty comprehending or following verbal instructions" for a problem solving task, and indicated that Plaintiff "possesses good attention to detail capabilities, can work independently, and has sound problem solving abilities." **Tr. at 143.**

With regard to Plaintiff's testimony relating to functional restrictions resulting from his depression, the ALJ noted that Plaintiff requested a referral to the University of New Mexico Mental Health Center in January 2000. **Tr. at 19.** At that time, Plaintiff's global assessment of functioning ("GAF") was rated at 55, which indicates a moderate level of severity. **Tr. at 194.** The ALJ noted that Plaintiff began taking psychotropic medications, and that he subsequently exhibited some degree of improvement. *See* **Tr. at 182-94** (change in level of severity from moderately ill to mildly ill). The ALJ also noted that one of Plaintiff's case managers wrote that Plaintiff was close to establishing some financial help that would greatly relieve Plaintiff's level of anxiety. **Tr. at 183.** Moreover, Mr. David Montoya's vocational testing indicated that Plaintiff possessed good attention to detail, could

work independently, and had sound problem solving abilities.  **Tr. at 143.**  In light of this evidence, the ALJ determined that Plaintiff's "mental impairment does not appear to impact significantly upon his ability to perform work-related functions."  **Tr. at 23.**

Given the ALJ's discussion of all of the foregoing evidence, I cannot say that the ALJ "made an unsupported conclusory statement" that Plaintiff's testimony was not credible without making clear what weight he gave to Plaintiff's statements and the reasons for that weight.  Instead, I find that the ALJ sufficiently linked his findings as to Plaintiff's credibility with substantial evidence in the record, and properly explained why specific evidence led him to conclude that Plaintiff's testimony about the extent of his functional restrictions was not credible.

Plaintiff also presents a second argument based upon Social Security Ruling 96-7p, which provides that an ALJ must consider the following in addition to objective medical evidence when assessing the credibility of a claimant's statements:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Plaintiff contends that the ALJ erred when he failed to analyze these factors.

The ALJ addressed the first factor, Plaintiff's daily activities, when he noted that Plaintiff owns his own home, takes care of his lawn, does small chores around the house, takes care of his

daily personal need without assistance, drives a car and performs most household activities. **Tr. at 23.** The ALJ found that these activities were consistent with light work activity. The ALJ also considered the fifth factor, which pertains to treatment other than medication Plaintiff had received for pain. In this regard, the ALJ noted that UNMMC physicians prescribed physical therapy, which Plaintiff did not pursue; UNMMC physicians referred Plaintiff to a pain clinic, which Plaintiff later said had nothing to offer him, **Tr. at 19;** and Dr. Sarah Gopman, Plaintiff's treating physician, recommended that Plaintiff consider acupuncture or trigger point injections, **Tr. at 20.** Moreover, the ALJ addressed the seventh factor when he considered other facts relating to Plaintiff's functional limitations and restrictions due to pain. Among other things, the ALJ considered the fact that both Drs. Toner and Reeve believed that Plaintiff "displayed a significant degree of symptom magnification," as well as the fact that Plaintiff's primary care physician, Dr. Gopman, "went to some lengths to make clear that her opinions were not based on objective findings, and she declined to draw many specific conclusions about how the claimant's pain symptoms might impact upon his capability to work." **Tr. at 22.** Accordingly, the question is whether the ALJ's credibility analysis was legally insufficient because he addressed some, but not all, of the factors set forth in SSR 96-7p.

Security Rulings are binding on an ALJ. *Nielson v. Sullivan,* 992 F.2d 1118, 1120 (10th Cir. 1993); *see also* 20 C.F.R. § 402.35(b)(1) (2003) (Social Security Rulings are "binding on all components of the Social Security Administration"). Regulations also require the decision maker in a disability case to consider the seven factors set forth in Social Security Ruling 96-7p. *See* 20 C.F.R. § 404.1529(c)(3) (2003); 20 C.F.R. § 416.929(c)(3)(2003). Nevertheless, relevant case law indicates that an ALJ's failure to discuss all of the factors relevant to a claimant's credibility is not error in itself. For example, in *Porter v. Chater,* 895 F.Supp. 1427 (D. Kan. 1995), an ALJ found that a

disability claimant's complaints of pain were only partially credible.  In response to the plaintiff's contention that the ALJ erred when he failed to consider "her daily activities, duration, frequency and intensity of pain, the dosage, effectiveness and side effects of medication, precipitating and aggravating factors, and functional restrictions," the court ruled that the ALJ's failure to recite every factor in his decision was not error.  *Id.* at 1436.  Likewise, in *Bridgeford v. Chater,* 922 F.Supp. 449, 459 (D. Kan. 1995), the court ruled that an ALJ's failure to discuss all of the factors pertinent to a pain analysis "is not error in itself."   Moreover, by way of analogy, Tenth Circuit case law prescribes certain factors that should be considered when analyzing the credibility of pain testimony. *See, e.g., Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir. 1988).  The Tenth Circuit Court of Appeals has long held, however, that "[t]here is not a talismanic requirement that each factor . . . be addressed, but [case law] sets out generally the kinds of factors that should ordinarily be considered." *Thompson v. Sullivan,* 987 F.2d 1482, 1490 (10th Cir. 1993); *see also Qualls v. Apfel,* 206 F.3d 1368 (10th Cir. 2000) (noting that the law does not require a "formalistic factor-by-factor recitation of the evidence" when evaluating a claimant's credibility).

I have previously found that the ALJ sufficiently linked his findings as to Plaintiff's credibility with substantial evidence in the record, and properly explained why specific evidence led him to conclude that Plaintiff's testimony about the extent of his functional restrictions was not credible. In view of the foregoing law, I also find that the ALJ's failure to discuss every factor from Social Security Ruling 96-7p does not comprise legal error requiring remand.

### 2.      Did the ALJ Rely on Improper Consultative Examinations?

In finding that Plaintiff retained the ability to perform a wide range of light work, the ALJ also relied upon consultative examinations performed by Dr. Eugene Toner and Dr. Anthony Reeve.

Plaintiff contends the ALJ erred in doing so.

### a.    Alleged Inconsistency in Dr. Toner's Report

Plaintiff's first contention is that Dr. Toner's conclusion that Plaintiff should not stand or sit more than six hours per day is inconsistent with his finding that Plaintiff had a significant structural abnormality that would interfere with his ability to sit, stand, walk and lift.  ***See* Tr. at 174.**  The structural abnormality referred to in Dr. Toner's report, spondylolisthesis, is defined as "[f]orward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or upon the sacrum."  Stedman's Medical Dictionary 1656 (26th ed. 1995).  However, Plaintiff offers no support whatsoever for his argument, and provides no reason why an ALJ or this Court would be more qualified than an examining physician to determine what limitations result from Plaintiff's medical condition.  Indeed, even if the ALJ disagreed with Dr. Toner he could not simply disregard his conclusion, for even though an ALJ has the authority "to make a final decision concerning disability, he can not interpose his own 'medical expertise' over that of a physician . . . ."  *Kemp v. Bowen,* 816 F.2d 1469, 1476 (10th Cir. 1987).  I therefore find that this alleged inconsistency does not render the ALJ's reliance on Dr. Toner's examination erroneous.

### b.    Whether a Rheumatological Evaluation Was Required

Plaintiff also objects to the evaluations performed by Dr. Toner and Dr. Reeve on the ground that both physicians performed only orthopedic and neurological evaluations when a rheumatological evaluation is proper for fibromyalgia.  Plaintiff clarifies in his Reply brief that he does not seek an additional consultative examination.  Instead, Plaintiff asserts that the ALJ should have relied upon the records of Plaintiff's treating physicians rather than relying upon the improper consultative examinations performed by Drs. Toner and Reeve.  Plaintiff also makes a related argument in another

section of his Memorandum Brief.  In this regard, Plaintiff asserts that the ALJ relied upon Dr.

Toner's orthopedic findings in order to find that Plaintiff retained the RFC to perform light work, but

failed to acknowledge that Dr. Toner did not perform an evaluation for fibromyalgia.  Pl.'s Mem. Br.

at 15.  According to Plaintiff, it follows that no evidence supports the ALJ's finding that Plaintiff can

perform light work.   For the following reasons, I disagree with Plaintiff's contention that the

evaluations performed by Dr. Toner and Dr. Reeve are invalid.  Because the evaluations are not

invalid, the ALJ could properly rely upon them in assessing Plaintiff's RFC.

As support for his argument, Plaintiff cites a case in which the court observed that

"[f]ibromyalgia is a rheumatic disease and the relevant specialist is a rheumatologist."  *Sarchet v.*

*Chater,* 78 F.3d 305, 307 (7th Cir. 1996).  However, *Sarchet* is inapposite in that the court did not

address the question of whether it would be *improper* to rely upon an examination conducted by a

physician who is not a rheumatologist when evaluating functional limitations resulting from

fibromyalgia. A more closely related question was addressed in an unpublished Tenth Circuit case,[2]

and I find the rationale underlying that decision persuasive here.

In *Gardner-Renfro v. Apfel,* 2000 U.S.App. LEXIS 32178 (10th Cir. 2000), the plaintiff

sought SSI and DIB based upon combined effects of chronic fatigue syndrome and dysthymia.  At

one point in a somewhat complicated procedural history, the plaintiff was examined by a board

certified specialist in internal medicine.  The internist expressed the opinion that the plaintiff exhibited

possible signs of fibromyalgia, and that she should undergo an immunological profile.  After the ALJ

later concluded that the plaintiff was not disabled, the Appeals Council reversed and, in relevant part,

---

[2]Although unpublished Tenth Circuit opinions do not constitute binding authority, *see* 10th Cir.
Rule 36.3, I find the Court's opinion persuasive and helpful to disposition in this case.

directed the ALJ to obtain further medical evidence from a rheumatologist.  On remand, the plaintiff was examined by another board certified specialist in internal medicine.  The ALJ again found that Plaintiff was not disabled, and that decision was affirmed by the Appeals Council and the district court.  On appeal to the Tenth Circuit, the Plaintiff contended, among other things, that the ALJ erred when he failed to order a consultative examination by a rheumatologist.

The Court acknowledged that none of the internists had performed any tests relating to fibromyalgia.  Nevertheless, the Court observed that "the operative question for disability benefits under the Act is whether plaintiff experiences functional limitations due to her impairments." *Gardner-Renfro,* 2000 U.S.App. LEXIS 32178 at 10.  The physicians who examined the plaintiff consistently found that there were no restrictions on her exertional or postural activities, no restrictions on her physical functions, and no environmental restrictions.  Thus, regardless of whether the plaintiff might have been diagnosed with fibromyalgia, the Court observed that "none of the consultative physicians found her to have functional impairments which precluded the performance of all work during the relevant period." *Id.* at 10-11.  The Court therefore concluded that the ALJ did not err when he failed to obtain an evaluation by a rheumatologist.  *Id.* at 11.

In this case, the two consultative physicians who examined Plaintiff assessed the functional restrictions that resulted from his impairments.  The conclusions reached by both doctors were consistent with a finding that Plaintiff could perform light level work.  As the Court noted in *Gardner-Renfro,* the operative question in a disability case is whether Plaintiff's impairment causes functional limitations.  Plaintiff does not explain how or why the opinion of a rheumatologist, or an evaluation specifically for fibromyalgia, would be in any way different from the opinions expressed by Dr. Toner or Dr. Reeve with regard to Plaintiff's functional restrictions or limitations.

16

Accordingly, I find that the ALJ did not err in relying upon the consultative examinations.[3]

### 3.        Did the ALJ Fail to Accord Proper Weight to a Vocational Evaluation?

Plaintiff underwent vocational testing conducted by Mr. David Montoya for the Department of Vocational Rehabilitation on September 6, 2000.  **Tr. at 140-44.**  Mr. Montoya found that Plaintiff's fine and gross motor dexterity were significantly impaired.  **Tr. at 142-43.**  However, the ALJ found that Mr. Montoya's evaluation was not "determinative, or even very useful, in regard to the claimant's upper extremity functioning."  *See* **Tr. at 22.**  Plaintiff contends that the ALJ improperly discounted Mr. Montoya's report.

The ALJ's first reason for finding that Mr. Montoya's evaluation was not helpful in assessing Plaintiff's upper extremity functioning was that he perceived a conflict between findings within the report.  The ALJ noted that, on one hand, Mr. Montoya's test results "seemed to indicate a significant impairment in fine and gross motor dexterity, and he said it was unlikely that the claimant could currently function competitively in a community job."  **Tr. at 22.**  On the other hand, Mr. Montoya concluded that Plaintiff "was an excellent candidate for vocational rehabilitation, and he characterized him as someone who could benefit from short-term training which would allow him to pursue competitive employment that did not require a great deal of physical exertion."  **Tr. at 22.**  Plaintiff

---

[3]Plaintiff also contends, for the first time in his Reply brief, that the ALJ should have accorded more weight to the opinions of Plaintiff's treating physicians than the opinions expressed in the consultative examinations.  However, Plaintiff's treating physician, Dr. Gopman, stated that she could not say how many hours or days Plaintiff would be able to work per week, **Tr. at 214,** noted that she relied upon Plaintiff to complete a work capacity assessment, and stated that "a more objective view" of Plaintiff's functional limitations "might be obtained via evaluation by an occupational therapist," **Tr. at 215.**  Indeed, the ALJ noted that "Dr. Gopman's progress notes also provide very few clinical findings in regard to the claimant's level of dysfunction other than a listing of his subjective complaints.  For the most part, her treatment records and her medical assessment contribute little information about the claimant's residual functional capacity."  **Tr. at 22.**  Plaintiff's treating physician's opinion regarding his functional limitations is, therefore, of limited value.

contends there is no conflict because Mr. Montoya did not state that Plaintiff *could* perform work that did not require a great deal of physical exertion on a regular basis. Instead, Plaintiff characterizes that statement as "wishful thinking" as to what Plaintiff might be able to do, and asserts that wishful thinking about one's functional capacities is not a proper basis for discrediting complaints of pain.

Contrary to Plaintiff's argument, I do not think Mr. Montoya's statement comprises "wishful thinking" about what Plaintiff might be able to do. Mr. Montoya plainly stated, with no limiting language, that Plaintiff "would be a good candidate to benefit from short-term training which would allow him to pursue competitive employment which does not require a great deal of physical exertion." **Tr. at 144.** Moreover, and in any event, Plaintiff is essentially asking this Court to re-weigh the evidence and substitute its judgment for that of the ALJ in interpreting Mr. Montoya's evaluation when it is clear that this Court cannot do so. *See, e.g., Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994).

The ALJ's second reason for discrediting part of Mr. Montoya's evaluation was that the ALJ surmised that Plaintiff might not have exerted full effort on his manual dexterity testing. **Tr. at 22.** The ALJ reached this conclusion for two reasons. First, nearly one year after Mr. Montoya's evaluation, Dr. Anthony Reeve found that Plaintiff had full range of motion in his upper extremities, including his shoulders and wrists, and had full strength in his hands and wrists. **Tr. at 243-44.** Second, the ALJ noted that Plaintiff wore bandages on both hands and wrists when he arrived for his evaluation with Mr. Montoya even though none of Plaintiff's treating or examining physicians mentioned a need for Plaintiff to wear bandages. This led the ALJ to surmise that the bandages may have "further limited his dexterity." **Tr. at 22.** Plaintiff contends the ALJ erred in relying upon the fact that Plaintiff wore bandages because "[t]here is no evidence to suggest that the bandages were

not prescribed, were not helpful, or did not increase [Plaintiff's] ability to use his hands," and because in doing so, the ALJ "impermissibly imposed his own medical opinion that the bandages restricted [Plaintiff's] hand usage and that testing was, therefore, not accurate."

Plaintiff incorrectly asserts that the ALJ relied solely upon the fact that Plaintiff wore bandages when he concluded that Plaintiff may not have exerted full effort during Mr. Montoya's manual dexterity testing.  The ALJ also cited Dr. Reeve's subsequent evaluation, which, unlike Mr. Montoya's results, indicated that Plaintiff had full range of motion and full strength in his hands and wrists.  **Tr. at 243-44.**  Moreover, Dr. Toner also found that Plaintiff retained full range of motion in his elbows and wrists, and believed there was no physiologic reason for weakness in Plaintiff's extremities. Thus, even if I assume it was improper for the ALJ to surmise that the bandages worn by Plaintiff restricted his manual dexterity, I find that other evidence still supports the ALJ's decision. Accordingly, I cannot say that the ALJ failed to accord proper weight to Mr. Montoya's evaluation.

### 4.     Did the ALJ Fail to Give Proper Weight to the Receipt of Collateral Benefits?

At the hearing before the ALJ, Plaintiff testified that he receives general assistance payments from the State of New Mexico based upon disability.  *See* **Tr. at 37.**  Plaintiff contends that the standards for receipt of general assistance are "almost identical to the requirements of Social Security," and that the ALJ therefore erred when he failed to consider the similarity in standards when he assessed Plaintiff's disability in this case.

In addressing the finding that Plaintiff is disabled for general assistance purposes, the ALJ wrote that he took this evidence of disability into consideration but did not give it conclusive weight in his findings.  **Tr. at 23.**  Applicable social security regulations provide that:

A decision by any nongovernmental agency or any other governmental agency about

> whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind.   We must make a disability or blindness determination based on social security law.   Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504 (2003); 20 C.F.R. § 416.904 (2003).  Even though decisions by other agencies are not binding on the Social Security Administration, their findings are entitled to consideration.  *E.g., Mandrell v. Weinberger,* 511 F.2d 1102, 1103 (10th Cir. 1975); *Baca v. Department of Health & Human Servs.,* 5 F.3d 476 (10th Cir. 1993).   Thus, the ALJ was generally correct when he considered the fact that Plaintiff was found disabled for general assistance purposes but did not give that finding conclusive weight.

In addressing the finding that Plaintiff is disabled for general assistance purposes, the ALJ also wrote that, "[i]t is well recognized that the disability standards applied by other entities, such as state welfare departments and Workers' Compensation insurance carriers, differ substantially from those set forth in the Social Security Act and are not binding on the Administration." **Tr. at 23.**  This statement indicates that, while the ALJ considered the fact that the State of New Mexico found Plaintiff disabled, he accorded that finding little weight because he believed the standards for general assistance "differed substantially" from the standards for SSI and DIB.   However, rather than differing substantially, I agree with Plaintiff that the standards are fairly similar.  Current New Mexico regulations governing general assistance provide as follows:

> To be eligible for GA based upon a permanent total disability, an individual must have a physical or mental impairment, expected to last at least 12 months, that prevents gainful employment in any employment position within the individual's current employment capacity.

N.M. Admin. Code title 8, § 102.420.11(B) (2003).  A person is disabled for SSI and DIB purposes if he or she is:

> [U]nable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).  The ALJ's assertion that disability standards applied by other governmental agencies differ substantially from those applied by the Social Security Administration indicates that he may not have given appropriate consideration to the State's finding of disability.  Accordingly, since this case is being remanded on other grounds, the ALJ should also reconsider the finding that Plaintiff is disabled for general assistance purposes in light of the similarity between the two agency standards.

### <u>Step Five</u>:  Did the Commissioner Establish that Plaintiff Retains the RFC to Perform Other Work That Exists in the National Economy?

At step five, the ALJ determined that Plaintiff retains the RFC to perform other work that exists in the national economy based upon Rule 202.21 of the Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("grids").  **Tr. at 24.**  Plaintiff contends that the ALJ's reliance on the grids was improper.

At step five of the sequential analysis, the Commissioner bears the burden of establishing that the claimant has the RFC "to perform other work in the national economy in view of his age, education and work experience."  *Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir. 1988) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)).  The grids were created to assist in this determination. "Through the grids, the [Commissioner] has taken administrative notice of the number of jobs that exist in the national economy at the various functional levels . . . ."  *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).  The grids are utilized, in appropriate cases, as follows.  After placing the claimant in a particular RFC category such as sedentary, light, medium, heavy or very heavy work,

*see* 20 C.F.R. § 404.1567 (2003); § 416.967 (2003), the adjudicator may turn to the grids to "direct a conclusion as to whether the claimant is or is not disabled, depending on the claimant's characteristics . . . ." *Williams,* 844 F.2d at 752. In many cases, the Commissioner can meet her burden of proving that jobs the claimant is able to do exist in significant numbers in the national economy by relying on the grids. *Channel,* 747 F.2d at 579. There are, however, instances in which the grids cannot be applied. For example, the grids cannot be applied conclusively in cases where the claimant's characteristics do not exactly match the grids. *Id.* Additionally, since the grids only consider exertional or strength based limitations, the grids may not be applicable where the claimant has nonexertional impairments. *Id.* at 580.

Plaintiff contends that the ALJ erred when he mechanically applied the grids because Plaintiff's limited ability to use his hands on a repetitive basis comprises a significant non-exertional impairment. Generally speaking, "the grids cannot be applied conclusively if a claimant has nonexertional limitations that significantly limit his ability to perform the full range of work in a particular RFC category on a sustained basis." *Williams,* 844 F.2d at 752 (internal quotations omitted). Defendant responds that the evidence in the record does not support a finding that Plaintiff's RFC includes a significant limitation on his ability to use his hands, as none of the doctors Plaintiff saw in 2000 documented any restriction on Plaintiff's ability to use his hands. In his Reply, Plaintiff points to the vocational evaluation performed by Mr. David Montoya. He also cites a record dated February 25, 2000 from the University of New Mexico Mental Health Center in which his therapist wrote that he quit his job due to his inability to type because of pain, **Tr. at 189,** and a record dated February 21, 2000 from the University of New Mexico Medical Center that noted that Plaintiff was "requesting a solution to the wrist/hand/elbow pain. Would like to try trigger point

22

injections.  States he can't work if he continues to have this kind of pain."  **Tr. at 227.**  The question, therefore, is whether, in light of this evidence, the ALJ erred when he failed to find that Plaintiff's difficulty using his hands significantly limits his ability to perform the full range of work in the light work category on a sustained basis.

It is well established that an ALJ may not rely conclusively on the grids unless he or she makes the following findings:  (1) the claimant has no significant nonexertional impairment; (2) the claimant can do the full range of work at some RFC level on a daily basis, and (3) the claimant can perform most of the jobs in that RFC level.  *Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993). These findings must be supported by substantial evidence.  *Id.*  In relation to his step five determination, the ALJ simply wrote that "Rule 202.21 (Table No. 2 - Residual Functional Capacity Limited to Light Work) serves as a guide in this case and leads to a conclusion of not disabled."  **Tr. at 24.**  For the following reasons, I find that the ALJ's step five analysis is insufficient.

### 1.  Does Plaintiff Have A Significant Nonexertional Impairment?

The ALJ rejected Plaintiff's claims of disabling pain because he found that Plaintiff's testimony and other evidence in the record did not "credibly establish functional limitations to the extent alleged," **Tr. at 19,** and I have found that the ALJ's credibility analysis was proper.  However, even if pain is not disabling it may still comprise a significant nonexertional impairment.  *See Thompson v. Sullivan,* 987 F.2d 1482, 1490-91 (10th Cir. 1993) (even if ALJ properly found claims of disabling pain were not credible, he could not have found that plaintiff had no significant nonexertional impairment).  In this case, the ALJ wholly failed to address the issue of whether Plaintiff's pain comprised a significant nonexertional impairment before relying upon the grids.  Moreover, "[p]ain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there

is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Id.* The ALJ never found that Plaintiff's pain was insignificant, and indeed, such a finding would seem inconsistent with the ALJ's step two finding that Plaintiff's fibromyalgia, or pain syndrome, was severe.

In view of the foregoing, I find that the ALJ erred when he conclusively relied upon the grids without first finding that Plaintiff had no significant nonexertional impairment.

**2.     Can Plaintiff do the Full Range of Work at the Light RFC Level on a Daily Basis?**

In his decision, the ALJ stated that Plaintiff could perform a "wide range of light level work." **Tr. at 21, 24.** The ALJ also wrote:

> 20 CFR 404.1567 and 416.967 define light work as lifting a maximum of 20 pounds occasionally and 10 pounds frequently. Light work requires considerable standing and walking, or sitting with some pushing and pulling of arm and leg controls. 20 CFR 404.1521, 416.921, 404.1545, 416.945, and Social Security Ruling 85-15 define the mental abilities of basic work activities as understanding, carrying out, and remembering simple instructions, using judgment, responding appropriately to supervisors and co-workers, and dealing with changes in a routine work setting. I find that the claimant retains the capability to perform these basic physical and mental activities.

**Tr. at 23.** Although the ALJ found that Plaintiff could perform a "wide range of light level work" and that Plaintiff could perform the "basic physical and mental activities" associated with light work, I do not see a finding, supported by substantial evidence, that Plaintiff can perform a *full range of light work on a daily basis.* I therefore find that the ALJ also erred when he relied upon the grids without first specifically finding that Plaintiff can perform a full range of light work on a daily basis.

**3.     Can Plaintiff Perform Most of the Jobs in the Light RFC Level?**

The ALJ stated in his decision that Plaintiff retains the ability to perform a "wide range of light-level work activity." **Tr. at 21, 24.** However, it is not clear to me that a "wide range" of light-

24

level work is the equivalent of a finding that Plaintiff can perform most jobs in that RFC level. Moreover, even if I assume that a "wide-range light-level work activity" translates into a finding that Plaintiff can perform most jobs in the light RFC level, the ALJ did not explain how he reached this conclusion. His failure to make a specific finding, supported by substantial evidence, that Plaintiff can perform most jobs in the light RFC level before relying upon the grids comprises legal error.

## Conclusion

In sum, I find that the ALJ erred at step four of the sequential analysis when he a) failed to determine which, if any, of Plaintiff's past jobs met the definition of past relevant work; b) failed to assess the physical and mental demands of Plaintiff's past relevant work, and c) failed to determine whether Plaintiff has the ability to meet those demands despite the limitations of his residual functional capacity. I also find that the ALJ may not have given appropriate consideration to the finding by the State of New Mexico that Plaintiff is disabled for general assistance purposes. I further find that the ALJ erred at step five of the sequential analysis when he relied upon the grids without first finding that a) Plaintiff has no significant nonexertional impairment, b) that Plaintiff can do the full range of work at the light RFC level on a daily basis, and c) that Plaintiff can perform most of the jobs in the light RFC level. Accordingly, this matter shall be remanded to the Commissioner of Social Security to conduct additional proceedings, which shall include:

1)       At step four of the sequential evaluation process, the Commissioner should assess the physical and mental demands of Plaintiff's "past relevant work," as that phrase is defined in *Jozefowicz v. Heckler,* 811 F.2d 1352, 135 (10th Cir. 1987), and determine whether Plaintiff has the ability to meet those demands despite the limitations of his residual functional capacity;

2)       The Commissioner should re-consider the finding by the State of New Mexico that

25

Plaintiff is disabled for general assistance purposes, giving proper consideration to the standards set forth in N.M. Administrative Code title 8, § 102.420.11(B), 42 U.S.C. § 423(d)(1)(A) and 42 U.S.C. § 1382c(a)(3)(A);

3)      If the Commissioner finds at step four that Plaintiff's impairment prevents him from performing past work, or as an alternative finding if the Commissioner finds that Plaintiff's impairment does not prevent him from performing past work, at step five the Commissioner shall not rely upon the grids without first making the required findings.  Specifically, the Commissioner may not rely upon the grids without first finding a) that Plaintiff has no significant exertional impairment, b) that Plaintiff can do the full range of work at the light RFC level on a daily basis, and c) that Plaintiff can perform most jobs in the light RFC level.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion  to Reverse or Remand the Administrative Decision filed on July 26, 2002 **[docket # 6]** is **GRANTED IN PART,** and this matter shall be remanded to the Commissioner of Social Security for further proceedings in accordance with this Memorandum Opinion and Order.

**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**